## SCHOFIELD *v.* CONLEY.

SALE—ACTION FOR PRICE — AGENCY — DISAFFIRMANCE OF CONTRACT.

    \* Plaintiff claims to have sold a team of horses to defendant through defendant's agent. Defendant claimed a limited agency; that the horses were unsound, were not matched, and not of a color he had instructed his agent to buy. *Held:*

    1. It was competent to show the physical condition of the horses for a long time previous to the sale, and that while plaintiff owned them he treated them for disease.

\* Head-notes by GRANT, J.

2. Under the facts and circumstances of the case, it was not error to refuse to instruct the jury that there was no evidence of a combination between plaintiff and defendant's agent to sell the horses to defendant.

3. Under the facts and circumstances, the defendant acted promptly in disaffirming the contract.

4. Plaintiff dealt with defendant's agent at his risk as to the authority of the agent. The statements made by the agent to plaintiff did not bind the defendant.

Error to Clinton; Stone, J. Submitted May 10, 1901. Decided May 21, 1901.

*Assumpsit* by Benjamin F. Schofield against John C. Conley for the purchase price of a team of horses. From a judgment for defendant, plaintiff brings error. Affirmed.

Plaintiff resides on a farm in Clinton county. He formerly kept a livery stable in St. Johns. The defendant lives in Rhode Island. Plaintiff claims to have sold a team of horses to defendant, through one George Lake, defendant's agent, at the price of $175. Lake paid $20, and subsequently $12.50. Defendant soon after came to St. Johns, and refused to take the team, claiming that they were unsound, and were not matched, or of a color that he had told Lake he wanted. Plaintiff gave testimony tending to show that Lake had been authorized by defendant to buy horses for him, and that the horses were sound. Defendant gave testimony to support his claim, and tending to show that the sole authority he gave Lake was to take options upon horses, and that he wanted a "'pair of chunks," chestnut, bay, brown, or black. Of the pair purchased, one was a buckskin and the other a gray. Defendant further claimed that there was a fraudulent understanding or scheme between plaintiff and Lake to sell the horses. Verdict and judgment for defendant.

*Edwin H. Lyon*, for appellant.

*Spaulding, Norton & Dooling*, for appellee.

GRANT, J. (*after stating the facts*). 1. It was not error to admit testimony to show the condition of the horses for a long time previous to the alleged sale, and that while plaintiff owned them they were treated for disease.

2. Error is assigned upon the refusal of the court to instruct the jury that there was no testimony of any combination or understanding between plaintiff and Lake to sell the horses to defendant. It is true that there was no testimony of any conversation between plaintiff and Lake tending to show such a scheme. But we cannot say there was no testimony tending to establish such a state of facts. Lake had been an employé of plaintiff. There was testimony that the horses were diseased, and had been for some time, and that these facts were known to plaintiff as well as Lake. Lake and defendant were in direct conflict as to the authority conferred upon Lake, and as to what took place when defendant came to St. Johns. In such case the appearance of the witnesses and the manner of testifying are important. The inferences were for the jury, and not for the court.

3. Error is assigned upon the refusal to give the following request:

"If you find from the testimony in the case that, upon a purchase of the horses in question by Lake for Conley, Schofield turned them over to Lake for Conley, and that they remained in Lake's possession or control until after the commencement of this suit, and further find that, shortly after the arrival of Conley, Lake informed him that he had purchased the team, then, under the undisputed testimony in the case, Conley must be held to have affirmed the contract of Lake in all respects, for the reason that he took no steps to disaffirm or rescind it; and your verdict must be for the plaintiff for the unpaid part of the purchase price, and the interest thereon since the date of the commencement of this suit."

This request was properly refused. Under any view taken of the testimony, defendant acted promptly in disaffirming the contract. According to his own testimony,

as soon as Lake showed him the horses he refused to take them. He did not then know Schofield, and had never seen him. The first conversation he had with plaintiff, he refused to take the horses. This was acting with sufficient promptness in disaffirming the contract.

4. The court refused to instruct the jury that the question was not what powers as an agent defendant actually gave Lake, but what powers he put him in position to assume, and gave the plaintiff to understand that he had. This was properly refused. Plaintiff relied at his peril upon the authority conferred upon Lake. He made no inquiries as to Lake's authority. If defendant authorized Lake to purchase horses of a certain quality, color, and soundness, this did not authorize Lake to buy horses generally. The statements, if any, made by Lake to plaintiff, were not binding upon defendant. Lake does not testify that he disclosed to plaintiff for whom he was purchasing the horses. All that plaintiff testified to upon the subject was that, when Lake first spoke to him about buying the " buckskin," he said he was going to buy two or three teams for Mr. Conley. The authority conferred upon Lake was a question of fact, and was properly submitted to the jury.

The judgment is affirmed.

The other Justices concurred.