GLOESER *v.* MOORE.

1. JUDGMENT — SUMMARY JUDGMENT — STATUTE AND COURT RULES MANDATORY.

Statute and court rules relative to motion for summary judgment and affidavits in support thereof and affidavits of merits are mandatory and not directory and failure by either party to follow the procedure prescribed will preclude the granting of a motion for summary judgment or the substantiation of a claim of defense (3 Comp. Laws 1929, § 14260; Court Rule No. 30, §§ 3, 4, 6 [1933]).

2. SAME—SUMMARY JUDGMENT—AFFIDAVITS—COURT RULES.

Portion of court rule requiring that it must be affirmatively shown that affiant who makes affidavit in support of motion for summary judgment was competent to testify as to facts set forth therein is mandatory (Court Rule No. 30, § 3 [1933]).

3. SAME—SUMMARY JUDGMENT—SUFFICIENCY OF SUPPORTING AFFI-
   DAVIT—COMPETENCY OF AFFIANT TO EXPRESS OPINION AS TO VALUE.
   In action to recover damages for fraud in defendants' sale to
      plaintiff of certificates of participation in an oil and gas syndi-
      cate, plaintiff's affidavit in support of her motion for summary
      judgment *held*, insufficient where it failed to show she had the
      requisite knowledge to enable her to testify competently to the
      value, or want of value, of the certificates which she received
      and statements in affidavit as to financial inability of syndicate
      to pay dividends claimed to have been promised and that be-
      cause she had not received certificates of the kind and character
      promised she had lost a certain sum of money were conclusions
      or opinions which it was not shown she was competent to ex-
      press (3 Comp. Laws 1929, § 14260; Court Rule No. 30, § 3
      [1933]).

4. EVIDENCE—VALUE OF PROPERTY.
   One need not be an expert to testify to the value of property, but
      must have knowledge of its value.

5. SAME—FINANCIAL RESPONSIBILITY.
   One may not testify as to the financial responsibility of another
      nor to the value of services without some competent knowledge
      thereof.

6. SAME—OPINION EVIDENCE.
   Opinion evidence may not be given by one who has no knowledge
      or experience.

7. SAME—VALUE.
   A witness as to value should, so far as practicable, detail the
      facts upon which his estimate or judgment is based.

8. SAME—FINANCIAL CONDITION OF ANOTHER—CONCLUSION.
   A statement which purports to give the actual financial condition
      of another, rather than the inference or conclusion of the wit-
      ness, is ordinarily rejected as a conclusion.

9. SAME—VALUE OF SECURITIES NOT QUOTED ON THE MARKET.
   Value, if any, of certificates of participation in an oil and gas
      syndicate, which were not quoted on the market, could be
      established by anyone who had the knowledge to qualify him
      to testify thereto.

10. JUDGMENT — SUMMARY JUDGMENT — SUPPORTING AFFIDAVITS — FRAUD—DAMAGES.

> Facts substantiating statement of amount of claimed loss must appear in affidavit in support of motion for summary judgment in order to sustain claim for damages in action based upon fraud (Court Rule No. 30, § 3 [1933]).

11. FRAUD—MEASURE OF DAMAGES.

> One who is deceived and defrauded can recover as damages the difference between the value of what he would have obtained had the statement been true and the value of what he actually received.

12. SAME—PRINCIPAL AND AGENT—OIL AND GAS SYNDICATE.

> Oil and gas syndicate organizers and syndicate are liable for fraud of their agent who sold certificates of participation in the syndicate to plaintiff notwithstanding provision in subscription contract that syndicate would not be bound by representations other than those printed therein where they obtained title to plaintiff's money through agent's fraud.

13. SAME—PROCUREMENT OF CONTRACT.

> Provision of contract stating party thereto would not be bound by representations not printed therein does not prevent showing that contract is void by reason of false and fraudulent representations in its procurement.

14. ELECTION OF REMEDIES—FRAUD—RESCISSION—DAMAGES.

> One who purchased certificates of participation in an oil and gas syndicate had a right, if defrauded, to tender back property received and to rescind the contract and sue to recover value of what she had paid or to retain what she had received and sue to recover damages for fraud.

15. MINES AND MINERALS—OIL AND GAS SYNDICATE—RESCISSION— TENDER.

> Tender of restoration of whatever plaintiff has received is a condition precedent to institution of action based on rescission of contract to purchase certificates of participation in an oil and gas syndicate.

16. SAME—RESCISSION—TENDER—VALUELESS PROPERTY.

> Failure of purchaser of certificates of participation in oil and gas syndicate to tender back portion of interest she had sold before institution of action, based on rescission for fraud, barred such action unless certificate sold was valueless.

17. CONTRACTS—RESCISSION.

> To rescind a contract for fraud, one must act promptly upon discovery that deception has been practiced upon him, or at least within a reasonable time.

18. SALES—RESCISSION.

> What is a reasonable time for rescission by a buyer depends upon the facts and circumstances of the particular case and is usually a question for the jury.

19. CONTRACTS—RESCISSION—FRAUD—RESTORATION TO STATUS QUO.

> A right of action to rescind a contract for fraud or false representations does not accrue until the injured party acquires knowledge of the facts on which rescission may be based and after such discovery the injured party has a reasonable time in which to decide upon the course to be pursued but must act while able himself, or by the judgment of the court, to place the opposite party substantially *in statu quo*.

20. CORPORATIONS—PURCHASE OF STOCK—FRAUD—WAIVER OF RESCISSION.

> A purchaser of corporate stock who delays several months after discovering he was deceived by false representations as to amount of dividends it would pay and obtains an extension of purchase money note and does not offer to rescind until suit is brought will be held to have waived his right of rescission.

21. JUDGMENT—SUMMARY JUDGMENT—SUPPORTING AFFIDAVIT—AFFIDAVIT OF MERITS.

> Supporting affidavit to motion for summary judgment stating that plaintiff lost a certain amount of money because certificates of participation in oil and gas syndicate received were not the kind represented was not met by affidavit of merits, which contained no statement of value, which denied authority of agent to make any statements beyond those contained in subscription contract and which claim certificates are worth, at time of filing affidavit, amount paid therefor, since right of recovery depends upon situation when action was commenced (3 Comp. Laws 1929, § 14260; Court Rule No. 30, §§ 3, 4 [1933]).

22. EVIDENCE—WITNESS OUTSIDE JURISDICTION OF COURT.

> Proof may be made of the testimony of a witness who is without the jurisdiction of the court where such witness was sworn and examined on a former trial.

23. SAME—TESTIMONY OF WITNESS ON FORMER TRIAL.

Anyone who has heard the testimony of a witness on a former trial is competent to testify as to what he said.

24. SAME—TESTIMONY OF WITNESS ON FORMER TRIAL.

Interest of plaintiff in testimony of witness in former trial, but now absent, which is the same in present, as in former, trial is sufficient to authorize the stenographer who took the testimony to read the same in evidence upon the trial of the present case.

25. JUDGMENT—SUMMARY JUDGMENT—SUPPORTING AFFIDAVIT—AFFI-
DAVITS OF MERITS.

Question of fact on measure of damages *held*, not raised by defendants' affidavits of merits where supporting affidavit stated plaintiff had lost a certain amount and affidavits of merits merely indicate at a later time the certificates of participation in oil and gas syndicate involved became valuable (3 Comp. Laws 1929, § 14260; Court Rule No. 30 [1933]).

Appeal from Washtenaw; Sample (George W.), J. Submitted January 12, 1938. (Docket No. 118, Calendar No. 39,808.) Decided April 4, 1938.

Action by Anna Gloeser against John Moore, Arthur B. Morris, Charles Van Keuren, Morris-Van Keuren Oil & Gas Syndicate No. 2, Arthur R. Morris, trustee, and Charles Van Keuren, trustee, to recover sums paid for certificates of participation in an oil well. Summary judgment for plaintiff. Defendants Arthur R. Morris, trustee, and Morris-Van Keuren Oil & Gas Syndicate No. 2 appeal. Reversed and new trial granted.

*William M. Laird,* for plaintiff.

*Arthur C. Lehman* and *Andrew J. Sawyer,* for defendants Morris, trustee, and Morris-Van Keuren Oil & Gas Syndicate No. 2.

POTTER, J. Plaintiff sued defendants for damages claimed to have been suffered because defendants

sold to her for $1,400 certificates of participation in an oil and gas syndicate, which certificates she alleges were worthless and which defendants by fraud induced her to buy. Her declaration contains four counts. In counts one, two and three, she tenders the certificates to defendants and seeks to rescind and to recover damages on the basis of rescission. In count four, no tender of the certificates is pleaded, but recovery is sought because the certificates delivered to her by defendants were worthless and tender of them was unnecessary. All material allegations of plaintiff's declaration were denied by all defendants, except Moore who did not answer. Summary judgment was entered for plaintiff, and defendants Morris, as trustee, and Morris-Van Keuren Oil & Gas Syndicate No. 2 appeal.

In 1934, Arthur R. Morris and Charles Van Keuren organized the Morris-Van Keuren Oil & Gas Syndicate No. 2, which owned oil and gas lands in Isabella and Ogemaw counties. John Moore was employed by them to sell undivided interests in the syndicate. In January, 1935, Moore sold plaintiff an undivided interest in the syndicate for $1,400. She claims Moore represented to her this syndicate had made profits and paid monthly dividends out of profits and would continue to do so. Moore, it is said, had no express authority to make any representations as to past or future dividends from the syndicate. Plaintiff claims, in reliance upon these representations by Moore, she parted with her money and later received certificates for her proportionate interest in the syndicate. The syndicate did not pay dividends as plaintiff claims it was represented by Moore it would, and she claims the certificates of interest in the syndicate delivered to her were not of the kind represented and promised to be delivered.

Plaintiff executed a preorganization subscription contract which contained a clause providing:

"The syndicate will not be bound by representations other than those printed herein."

In this contract, there is no statement in relation to past or future dividends to be paid.

Plaintiff claims she first learned the syndicate had not paid certificate holders monthly dividends in the summer of 1935, and was not in such a financial position it would do so regularly. She admits the certificates delivered to her did not provide she was to receive from profits of the syndicate regular monthly dividends. She made demand for return of her money. Defendants refused to return the money or accept return of the certificates. In July, 1936, plaintiff brought suit against Moore alone for fraud in the sale of the certificates of interest to her. This suit was tried in March, 1937, and ended in a disagreement by the jury. The present suit was started May 3, 1937. A motion for summary judgment was filed August 18, 1937, supported by plaintiff's affidavit. An affidavit of merits was filed by defendant Van Keuren individually and as trustee. Andrew J. Sawyer, an attorney, filed an affidavit on behalf of defendants Morris, trustee, and Morris-Van Keuren Oil & Gas Syndicate No. 2. Philip Neudeck, an attorney who examined Moore on the previous trial, filed an affidavit in which it is stated he attempted to and was unable to communicate with Moore, that he is advised and believes Moore is out of the State and unavailable, and he (Neudeck) knows the facts and circumstances of the case which would constitute Moore's testimony in a future trial. There was no affidavit filed on behalf of Moore individually or as trustee, nor for Morris individually. Plaintiff's affidavit contains substantially the facts

claimed by her as above set forth and in addition showed she had disposed of 1/1,000 interest in the syndicate and had 13/1,000 interests left. Her affidavit stated:

"That said syndicate was not in a financial position to pay regular monthly dividends to the certificate owners, and that the certificate of interests in said syndicate delivered to this deponent was not of the kind or character promised by the said Moore. * * * Deponent further says that by reason of the failure of the defendants to furnish and to deliver to this deponent, as the said John Moore had agreed, income-producing certificate, that deponent has lost all of her money turned over by her to the said syndicate except the price of the 1/1,000 interest disposed of by her and that deponent has lost the sum of $1,300, which was turned over by her to the said John Moore, together with interest thereon at the rate of 5 per cent. per annum, or a total of $1,391.41."

The affidavits of Sawyer and Van Keuren deny any authority having been given Moore to make any statements not contained in the preorganization subscription contract and allege plaintiff had knowledge of such limitation on Moore's authority from the stipulation in the contract, and they cannot be bound by any statement in violation thereof. It is denied the certificates are worthless but asserted they are *now* valuable.

Neudeck's affidavit states claimed representations were made concerning Morris-Van Keuren Oil & Gas Syndicate No. 1, a separate and distinct enterprise; and the only representation as to syndicate No. 2 was that it had in the past paid dividends upon investments, which was true, and the certificates promised were the ones delivered.

The motion was heard as prescribed by 3 Comp. Laws 1929, § 14260 (Stat. Ann. § 27.989), and Court Rule No. 30 (1933). The trial court, finding plaintiff's affidavit attached to the motion for summary judgment was sufficient and the affidavits filed by defendants raised no valid defense, granted the motion, assessing plaintiff's damages at $1,391.41, and costs.

Court Rule No. 30, § 3 (1933), provides:

"The affidavit verifying the plaintiff's cause of action shall be made on the personal knowledge of the affiant; shall set forth with particularity the facts upon which the plaintiff's cause of action is based; * * * shall not consist of conclusions but of such facts as would be admissible in evidence; and shall show affirmatively that the affiant, if sworn as a witness, can testify competently thereto. If all the facts to be shown are not within the personal knowledge of one person, then two or more affidavits may be used."

Defendants' affidavit of merits, according to Court Rule No. 30, § 4 (1933), to prevent the entry of summary judgment, "shall be drawn in the same manner as the affidavit mentioned in section 3, *supra,* and in addition shall set forth that all the facts pertaining to the action have been fully and fairly stated to the defendant's counsel, naming him, and that the defendant, upon such statement, has been advised by such counsel that he has a defense to the action or to some portion thereof upon the merits, or a set-off thereto."

Court Rule No. 30, § 6 (1933), provides:

"Should the affidavit of either party contain a statement that any of the material facts which ought to appear in such affidavit are known only to persons whose affidavits affiant is unable to procure, by rea-

son of hostility or otherwise, naming such persons and showing why their affidavits cannot be procured, and what affiant believes they would testify to if sworn, with his reasons for such belief, the court may make such order as may be just. * * * The interrogatories and sworn answers thereto, depositions so taken, and sworn copies of papers and documents so furnished, shall be considered as a part of the affidavit in support of plaintiff's claim or of the affidavit of merits, as the case may be.''

It is necessary the statute above cited and the court rule above mentioned be complied with. The rule is mandatory and not directory. A failure by either party to follow the procedure prescribed will preclude the granting of a motion for summary judgment or the substantiation of a claim of defense. Plaintiff claims in her affidavit the syndicate was financially unable to pay regular monthly dividends, that the certificates delivered to her were not of the kind or character promised and by reason thereof she lost $1,300. That portion of the rule which prescribes it must be affirmatively shown the witness could testify competently is mandatory. *Birgbauer* v. *Ætna Casualty & Surety Co.*, 251 Mich. 614; *La Prise* v. *Wayne Circuit Judge*, 234 Mich. 371. The affidavit of plaintiff does not in any part of it set forth such knowledge of the financial affairs of the syndicate in question as would enable her to testify to the difference between the certificates of interest which she received and what she claims it was represented she would receive. She could testify as to the promises of monthly dividends and to the fact such dividends were not received. In her affidavit, she says the syndicate was not in a financial position to pay as she claims was promised. This was a conclusion. Financial inability to pay need not necessarily follow a failure to pay dividends. Her affi-

davit indicates that because she did not get certificates of the kind and character it was represented she would get, she lost $1,300. This, too, is a conclusion of plaintiff and it is not shown she was competent to express such conclusion or opinion.

One need not be an expert to testify to the value of property, but must have knowledge of its value. *Continental Ins. Co.* v. *Horton,* 28 Mich. 173; *Guest* v. *New Hampshire Fire Ins. Co.,* 66 Mich. 98. A farmer may testify to the value of horses (*Browne* v. *Moore,* 32 Mich. 254), to damage to farm crops (*Enright* v. *Hartsig,* 46 Mich. 469), or the value of lands. *McCormick* v. *Bradbury,* 187 Mich. 512. The owner of a sealskin coat may testify to its value. *Printz* v. *People,* 42 Mich. 144 (36 Am. Rep. 437). One may not testify as to the financial responsibility of another without some competent knowledge of it (*Harrison Granite Co.* v. *Railroad Co.,* 145 Mich. 712), nor to the value of services. *Feldman* v. *Railway,* 162 Mich. 486. Opinion evidence may not be given by one who has no knowledge or experience. *Jacobs* v. *Hagenbeck-Wallace Shows,* 198 Mich. 73 (L. R. A. 1918 A, 604, 16 N. C. C. A. 535). In *Diel* v. *Kellogg,* 163 Mich. 162, a witness who did not qualify as an expert testified as to the value of corporate stock, but he was a broker who had been engaged in selling the stock and a stockholder in the corporation. A witness as to value should, so far as practicable, detail the facts upon which his estimate or judgment is based (22 C. J. p. 575); and a statement which purports to give the actual financial condition of another, rather than the inference or conclusion of the witness, is ordinarily rejected as a conclusion. 22 C. J. p. 617.

The certificates of interest in question were not quoted on the market, but their value, if any, could be established by anyone who had the knowledge to

qualify him to testify thereto. *Greene-Grieb-Sherman Co.* v. *John C. Quinlen Co.,* 148 Ill. App. 1. Plaintiff's affidavit did not show she had the requisite knowledge to enable her to testify competently to the value, or want of value, of the certificates of participation which she received.

Defendants claim plaintiff's affidavit is faulty in that it states she lost $1,300. They contend this is an estimate in gross and a conclusion. It was incumbent upon plaintiff to put the facts made the basis of her statement in the affidavit in order to sustain her claim for damages.

In *Chapman* v. *Bible,* 171 Mich. 663 (43 L. R. A. [N. S.] 373), it was held to be the correct rule "that, where one is deceived and defrauded, he can recover as damages the difference between the value of what he would have obtained had the statement been true, and the value of what he actually received." 2 Mechem on Sales (1st Ed.), § 1843; *Fargo Gas & Coke Co.* v. *Fargo Gas & Electric Co.,* 4 N. D. 219 (59 N. W. 1066, 37 L. R. A. 593); *Page* v. *Wells,* 37 Mich. 415; *Jackson* v. *Armstrong,* 50 Mich. 65; *Smith* v. *Werkheiser,* 152 Mich. 177 (15 L. R. A. [N. S.] 1092, 125 Am. St. Rep. 406).

The provision in the subscription contract by which defendants seek to protect themselves from fraudulent representations made by Moore is ineffectual for that purpose. Whatever title the defendants, other than Moore, obtained to the money paid by plaintiff was through the agency of Moore and they are chargeable with his frauds to the same extent as if they had committed them themselves. *McIntire* v. *Pryor,* 173 U. S. 38 (19 Sup. Ct. 352); *Nelson* v. *Title Trust Co.,* 52 Wash. 258 (100 Pac. 730); *Busch* v. *Wilcox,* 82 Mich. 336 (21 Am. St. Rep. 563); *Bertha* v. *Regal Motor Car Co.,* 180 Mich. 51 (8 N. C. C. A. 460); *Upell* v. *Bergman,* 246 Mich. 82;

*Chaffee* v. *Raymond,* 241 Mich. 392; *Lane* v. *Wood,* 259 Mich. 266; *Gower* v. *Wieser,* 269 Mich. 6; *Peck* v. *Jenison,* 99 Mich. 326.

In *Plate* v. *Detroit Fidelity & Surety Co.,* 229 Mich. 482, it is said:

"The seal of silence as to actual fraud is not imposed by any such provisions. It is elementary that fraudulent representations inducing a contract will void it. * * * It has long been settled that such provisions in a contract do not prevent showing the contract is void by reason of false and fraudulent representations in its procurement."

See, also, *J. B. Colt Co.* v. *Reade,* 221 Mich. 92; *J. B. Millet Co.* v. *Andrews,* 175 Mich. 350; *Delta Asbestos Co., Inc.,* v. *Sanders,* 259 Mich. 317; *Fignar* v. *Schreiber,* 255 Mich. 661.

Plaintiff had a right, if she was defrauded, to rescind the contract and sue to recover the value of what she had paid. To do this, she must have tendered back the property received. Or, she had a right to retain what she had received and sue to recover damages for the fraud. But she could not do both. *Foster Machine Co.* v. *Covel Manfg. Co.,* 219 Mich. 455; *Austin* v. *Ash,* 232 Mich. 251; *Sloman* v. *Allen,* 252 Mich. 578.

(a) Plaintiff seeks to rescind. Her previous tender of restoration of whatever she received under the contract was a condition precedent to the institution of her suit. *Owen* v. *Button,* 210 Mass. 219 (96 N. E. 333); *Matteawan Co.* v. *Bentley,* 13 Barb. (N. Y.) 641; *Royal* v. *Goss,* 154 Ala. 117 (45 South. 231); *Ludington* v. *Patton,* 111 Wis. 208 (86 N. W. 571); 2 Black on Rescission & Cancellation (1st Ed.), § 625, p. 1443.

(b) Plaintiff, before instituting suit, sold one-fourteenth of what she bought. This interest so sold

was not tendered back prior to instituting suit and is not tendered back to defendants in plaintiff's declaration. Unless the certificates of interest in question were valueless, this sale of a part of what she received barred rescission and prevents recovery on that theory. *Hubbardston Lumber Co.* v. *Bates,* 31 Mich. 158; *Walter-Wallingford Coal Co.* v. *A. Himes Coal Co.,* 223 Mich. 576; *Adam Kroehle's Sons Co.* v. *Rockford Oak Leather Co.,* 240 Mich. 524; 2 Black on Rescission & Cancellation (1st Ed.), § 587, p. 1371, and cases cited.

To rescind, one must act promptly upon discovery that deception has been practiced upon him (*Wright* v. *Peet,* 36 Mich. 213; *Schofield* v. *Conley,* 126 Mich. 712; *Coca-Cola Bottling Co.* v. *Anderson,* 13 Ga. App. 772 [80 S. E. 32]) ; at least, within a reasonable time. *Gridley* v. *Globe Tobacco Co.,* 71 Mich. 528; *Clark* v. *Mowyer,* 5 Mich. 462; *Stange* v. *Wilson,* 17 Mich. 341; *Grant* v. *Merchants & Manufacturers' Bank of Detroit,* 35 Mich. 515. What is a reasonable time for rescission by the buyer depends upon the facts and circumstances of the particular case (55 C. J. pp. 287, 288), and is usually a question for the jury. *Geo. D. Sisson Lumber & Shingle Co.* v. *Haak,* 139 Mich. 383; *Jones* v. *Bloomgarden,* 143 Mich. 326. A right of action to rescind a contract for fraud or false representations does not accrue until the injured party acquires knowledge of the facts on which the claim for relief may be based. 2 Black on Rescission & Cancellation (1st Ed.), § 538, p. 1267. After discovering the facts justifying rescission, the party claiming to have been defrauded is entitled to a reasonable time in which to decide upon the course to be pursued. One who would rescind a contract for fraud must offer to do so promptly on discovering the facts that will justify rescission, and while able

himself, or by the judgment of the court, to place the opposite party substantially *in statu quo*. 2 Black on Rescission & Cancellation (1st Ed.), § 536, pp. 1264, 1265. Where a purchaser of stock in a corporation delays for several months after discovering he was deceived by false representations as to the amount of dividends it would pay, and obtains an extension of the purchase-money note, and does not offer to rescind until suit is brought, he will be held to have waived his right to rescind. 2 Black on Rescission & Cancellation (1st Ed.), § 541, p. 1277.

The affidavits filed by Sawyer and by Van Keuren do not meet the affidavit filed by plaintiff. She states that because she did not receive the kind of certificate represented, she lost $1,300. The affidavits of merits deny the authority of Moore to make any statements beyond those contained in the written contract. Such affidavits make no statement in relation to the value of the certificates of interest which she purchased at the time she purchased them, but claim they are now worth what plaintiff paid. When the statements were made, they were either true or false, and plaintiff's right to recovery must depend upon the situation at the time suit was commenced. There is no showing in the affidavit of merits filed by Sawyer that he is qualified to estimate the value of the oil or gas wells.

Under the facts, where Moore was sworn and examined as a witness in a former case, it is probable Neudeck might be competent to testify to what the witness testified in a former case. That proof may be made of the testimony of a witness who is without the jurisdiction of the court, where such witness was sworn and examined on a former trial, is well established. *Krouse* v. *Railway,* 170 Mich. 438; *People* v. *Long,* 44 Mich. 296; 3 Wigmore on Evidence (2d

Ed.), p. 118, § 1405.   The general rule is stated in 22 C. J. p. 442, that the former evidence of a witness may be established by the testimony of any person who can swear to it from memory.   It may be proven by the official stenographer.   *Merrill* v. *Leisenring,* 166 Mich. 219.   And the law of this State is in accordance with the general rule, that anyone who has heard the testimony of a witness is competent to testify as to what he said.   *Barker* v. *Hebbard,* 81 Mich. 267.   Plaintiff had the same interest in the testimony of Moore in the former trial as in the present proceeding and the same interest in his examination and cross-examination.   This would be sufficient to authorize the stenographer who took the testimony to read the same in evidence upon the trial of the present case.

It is claimed defendants' affidavits of merits raised questions of fact on the measure of damages.   It cannot be said that either the affidavit of Sawyer or that of Van Keuren met the allegation of plaintiff's affidavit as to damages.   Their affidavits merely indicate that at a later time the certificates of interest actually received by plaintiff became valuable.

A companion case is *Gloeser* v. *Moore,* 283 Mich. 425, decided February 24, 1938.   For the reasons stated therein and herein, judgment is reversed and new trial granted, with costs to appellants.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, CHANDLER, NORTH, and MCALLISTER, JJ.. concurred.